AUSAs: Catherine Ghosh, Jerry Fang, Meredith Foster, Sebastian Swett, Jacob Fiddelman

| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK | **24 MAG 414** |
| UNITED STATES OF AMERICA | <u>**SEALED COMPLAINT**</u> |
| v. | Violations of 18 U.S.C. §§ 666 and 1951 |
| GWENDOLYN BELL, | COUNTY OF OFFENSE:<br>NEW YORK |
| Defendant. | |

SOUTHERN DISTRICT OF NEW YORK, ss.:

KAREN SMITH, being duly sworn, deposes and says that she is a Confidential Investigator with the New York City Department of Investigation ("NYC DOI") – Office of the Inspector General for the New York City Housing Authority ("NYCHA-OIG"), and charges as follows:

### COUNT ONE
### (Solicitation and Receipt of a Bribe by Agent of Organization Receiving Federal Funds)

1.      From at least in or about 2019 through at least in or about 2023, in the Southern District of New York and elsewhere, GWENDOLYN BELL, the defendant, being an agent of an organization, and of a state, local, and Indian tribal government, and an agency thereof, to wit, the New York City Housing Authority ("NYCHA"), which received, in the calendar years 2019 through 2023, benefits in excess of $10,000 under a federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of federal assistance, corruptly solicited and demanded for the benefit of a person, and accepted and agreed to accept, a thing of value from a person, intending to be influenced and rewarded in connection with business, a transaction, and a series of transactions of NYCHA involving a thing of value of $5,000 and more, to wit, BELL solicited and accepted a total of at least approximately $28,000 in bribes in exchange for arranging for certain contractors to receive no-bid contracts from NYCHA worth a total of at least approximately $250,000.

(Title 18, United States Code, Section 666(a)(1)(B).)

### COUNT TWO
### (Extortion Under Color of Official Right)

2.      From at least in or about 2019 through at least in or about 2023, in the Southern District of New York and elsewhere, GWENDOLYN BELL, the defendant, knowingly committed and attempted to commit extortion, as that term is defined in Title 18, United States Code, Section 1951(b)(2), and thereby obstructed, delayed, and affected commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), to wit, BELL, under color of official right, obtained money from NYCHA contractors, with their consent, that was not due BELL or her office.

(Title 18, United States Code, Section 1951.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

## OVERVIEW

3. I am a Confidential Investigator with the NYC DOI NYCHA-OIG, and I have been personally involved in the investigation of this matter. I have been employed by NYC DOI since 2023. I and other members of the investigative team, which includes agents from NYC DOI, the United States Department of Housing and Urban Development – Office of Inspector General ("HUD-OIG"), United States Department of Homeland Security – Homeland Security Investigations ("HSI"), the United States Department of Labor – Office of Inspector General ("DOL-OIG"), and the United States Attorney's Office for the Southern District of New York ("USAO-SDNY") (collectively, the "Investigating Agencies"), have experience with bribery and extortion investigations and techniques associated with such investigations.

4. This affidavit is based in part upon my own observations, my conversations with other law enforcement agents and others, my examination of documents and reports prepared by others, my interviews of witnesses, and my training and experience. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all of the facts that I have learned during the course of the investigation. Where the contents of documents, including emails, and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where specifically indicated otherwise.

5. As set forth in more detail below, there is probable cause to believe that GWENDOLYN BELL, the defendant, an employee of NYCHA at all relevant times, solicited and accepted bribes from contractors in exchange for awarding no-bid contracts for work performed at NYCHA developments, and extorted contractors under color of official right.

## BACKGROUND REGARDING NYCHA AND NO-BID PROCESS

6. Based on my training and experience, review of records and manuals maintained by NYCHA, discussions with NYCHA employees, and discussions with other agents with the Investigating Agencies, I have learned that:

   a. NYCHA is a New York City public entity that provides housing to low- and moderate-income New York City residents.

   b. NYCHA's operations are funded, in part, by grants from the United States Department of Housing and Urban Development ("HUD"). In each year from at least 2019 through 2023, HUD provided over $1.5 billion in funding to NYCHA, making up a substantial portion of NYCHA's budget.

   c. NYCHA procurements funded at least in part through federal funds must abide by various federal regulations, including that NYCHA must conduct all procurement transactions "in a manner providing full and open competition." As such, goods and services must

typically be purchased via a bidding process in which NYCHA receives multiple bids after outreach to multiple prospective bidders.

   d. When the value of a contract is under a certain threshold (sometimes called a "micro purchase," and which contractors often refer to as a "purchase order" or "PO" contract), designated staff at NYCHA developments may hire a contractor of their choosing without soliciting multiple bids in order to quickly procure goods or services.  This "no-bid" process is faster than the general NYCHA procurement process, and selection of the contractor requires approval of only the designated staff at the development where the work is to be performed.  As is relevant to this Complaint, the threshold for a no-bid contract was $5,000 until approximately June 26, 2019, and was then raised to $10,000.

   e. For no-bid contracts, designated NYCHA staff typically communicate with a contractor to request an estimate for the proposed work.  The contractor performs an initial site visit and then submits an itemized proposal to the designated staff.  The NYCHA employee submits this proposal electronically to the NYCHA Procurement Department, located at 90 Church Street, New York, New York, and upon approval by the Procurement Department a purchase order is issued.  After the Procurement Department issues the purchase order, the contractor then performs the work.  After the work is completed, a designated NYCHA development staff member performs a site visit.  If the staff member deems the contractor's work satisfactory, the NYCHA staff member approves the contractor's "statement of services" and submits it to NYCHA, which then issues payment directly to the contractor or to the contractor's bank account.

   f. NYCHA employees receive the NYCHA Human Resources Manual (the "Manual"), including periodic updated versions.  Versions of the Manual from at least 2016 to the present state that "Employees of NYCHA may ***not***: . . .

> • Accept a valuable gift as defined by the NYC Conflicts of Interest Board[1] from anyone that employees know or should know is seeking or receiving anything of value from the City or NYCHA.
>
> • Accept anything from anyone other than NYCHA for doing their NYCHA job, except as may be expressly authorized by NYCHA. . . .
>
> • Fail to report directly and without delay, to the Office of the Inspector General or the New York City Department of Investigation, any and all information concerning conduct that they know or should reasonably know to involve corrupt or other criminal activity or conflict of interest by any officer or employee of NYCHA or the City of New York which concerns their office or employment, or by any person dealing with NYCHA or the City of New York, which concerns their dealings with NYCHA or the City of New York. . . .
>
> • Bribe, attempt to bribe, or solicit, give, agree to accept or accept a gratuity, benefit, money or anything of value in connection with their actions or duties as

---

[1] The NYC Conflicts of Interest Board defines a "valuable gift" as "any gift to a public servant which has a value of $50.00 or more, whether in the form of money, service, loan, travel, entertainment, hospitality, thing or promise, or in any other form."

employees or in connection with the actions or duties of any other employee of NYCHA.

- Engage in any dishonest conduct, including but not limited to theft, fraud, [or] deceit, . . . falsifying or inappropriately altering any document, record, file or form of NYCHA or other entity, or knowingly submitting any falsified or inappropriately altered document, record, or form to NYCHA or other entity.

- Coerce or attempt to coerce, by intimidation, threat or harassment, any employee or resident of NYCHA or member of the public to engage in any activity that violates any law, or government regulation or any NYCHA rule or regulation."

## BELL'S EMPLOYMENT BY NYCHA

7. Based on my review of records provided by NYCHA, I have learned the following, in substance and in part, regarding the NYCHA employment history of GWENDOLYN BELL, the defendant:

   a. From at least in or about March 2019 through at least in or about May 2021, BELL was employed as an assistant superintendent at Fiorentino Plaza, a NYCHA development located in Brooklyn, New York.[2]

   b. From at least in or about May 2021 through at least in or about November 2022, BELL was employed as a superintendent at Breukelen, a NYCHA development located in Brooklyn, New York.

   c. From at least in or about November 2022 through at least in or about January 2024, BELL was employed as a superintendent at Marlboro, a NYCHA development located in Brooklyn, New York.

## BELL'S SOLICITATION AND RECEIPT OF PAYMENTS

8. Based on my review of records provided by NYCHA, my discussions with other law enforcement officers, and my discussions with a cooperating witness ("CW-2")[3] who has performed work at NYCHA's Breukelen and Marlboro, among other developments,[4] I have learned the following, in substance and in part:

---

[2] Fiorentino Plaza is managed by another NYCHA facility, Unity Plaza. As an assistant superintendent at Fiorentino Plaza, GWENDOLYN BELL, the defendant, also had authority to approve no-bid purchase orders at Unity Plaza.

[3] The cooperating witnesses referenced in this Complaint are designated as "CW-2" and "CW-6" because this Complaint is being sought simultaneously with dozens of other Complaints charging other NYCHA employees arising out of the same investigation, and the Government has assigned unique numbers to cooperating witnesses across the entire investigation.

[4] CW-2 testified in the grand jury pursuant to an immunity order, and previously provided information to law enforcement during additional interviews pursuant to an agreement to extend the same immunity protections to the interviews. Based on my review of immigration records, I

4

a. Since at least in or about 2020, CW-2 performed contracting work for NYCHA with several contracting companies that purchased materials from various retailers, including retailers that sold items in interstate commerce.

b. CW-2 was awarded at least approximately four no-bid contracts at Breukelen from in or about March 2022 through in or about October 2022, during the time in which GWENDOLYN BELL, the defendant, served as a superintendent at that NYCHA facility. During that time, CW-2 paid approximately $1,500 in cash for approximately one $10,000 no-bid contract, and between $600 and $700 in cash for each of approximately three $5,000 no-bid contracts.

c. CW-2 was awarded approximately nine no-bid contracts at Marlboro from in or about March 2023 through in or about July 2023, during the time in which BELL served as a superintendent at that NYCHA facility. During that time, CW-2 paid BELL between approximately $500 and $1,000 in cash for each of the no-bid contracts that CW-2 was awarded by BELL for work at Marlboro.

d. CW-2 understood, based on CW-2's interactions with BELL and with other NYCHA employees who similarly required payments for work, that if CW-2 did not make payments to BELL, CW-2 would not be awarded additional no-bid contracts for work at the NYCHA developments at which BELL worked.

e. On or about July 26, 2023, CW-2 reviewed photobooks containing a photograph of BELL among photographs of dozens of other individuals. CW-2 identified the photograph of BELL as "Ms. Bell," the NYCHA employee to whom CW-2 had made payments in exchange for no-bid contracts from NYCHA.

f. CW-2 has a contact saved in CW-2's cellphone with the name "Bell Gwendolyn Super" and a particular phone number ending in -0141 (the "BELL Number"). Based on subscriber records which I have reviewed, I have confirmed that the BELL Number is subscribed to "Gwendolyn Bell."

9. Based on my review of records provided by NYCHA, my discussions with other law enforcement officers, and my discussions with a cooperating witness ("CW-6"),[5] who has performed work at NYCHA's Unity Plaza, among other developments, I have learned the following, in substance and in part:

---

have learned that, based on matching biometric information, CW-2 appears to have previously applied for immigration benefits under a different name, which application was denied.

[5] CW-6 has provided information to law enforcement pursuant to a proffer agreement and has testified in the grand jury pursuant to an immunity order. CW-6 has never worked at any of the contracting companies where CW-2 worked. Both CW-2 and CW-6 were interviewed separately and instructed by law enforcement not to discuss the substance of their interviews and grand jury testimony in connection with this investigation, and I have no reason to believe that CW-2 and CW-6 know each other.

a. Since at least in or about 2019, CW-6 performed contracting work for NYCHA with certain contracting companies that purchased materials from various retailers, including retailers that sold items in interstate commerce.

b. CW-6 began performing no-bid purchase order work at Unity Plaza in or about July 2019. CW-6 was awarded approximately seven no-bid contracts at Unity Plaza from in or about July 2019 through in or about June 2020, during the time in which GWENDOLYN BELL, the defendant, served as an assistant superintendent at Fiorentino Plaza. However, CW-6 initially was not able to obtain contracts from BELL at Unity Plaza. After CW-6 paid BELL approximately $200, BELL began awarding contracts to CW-6 for work at Unity Plaza. From in or about July 2019 through in or about June 2020, CW-6 paid BELL for each of the no-bid contracts CW-6 received at Unity Plaza. Specifically, CW-6 paid BELL approximately $1,000 cash for each $5,000 contract, and between approximately $300 and $700 for each of the smaller contracts.

c. CW-6 began performing no-bid purchase order work at Breukelen in or about October 2019. CW-6 was awarded approximately five no-bid contracts at Breukelen from in or about January 2022 through in or about August 2022, during the time in which BELL served as a superintendent at Breukelen. During that time, CW-6 paid BELL approximately 20% of the contract price for each of the no-bid contracts CW-6 received at Breukelen. The contracts were typically each worth between approximately $5,000 and $10,000, and CW-6 therefore paid BELL between approximately $1,000 and $2,000 in cash per contract.

d. CW-6 understood, based on CW-6's interactions with BELL and with other NYCHA employees who similarly required payments for work, that if CW-6 did not make payments to BELL, CW-6 would not be awarded no-bid contracts from BELL.

e. On or about July 21, 2023, CW-6 reviewed photobooks containing a photograph of BELL among photographs of dozens of other individuals. CW-6 identified the photograph of BELL as "Gwendolyn Bell" at Marlboro, the NYCHA employee to whom CW-6 had made payments in exchange for no-bid contracts from NYCHA.[6]

f. CW-6 has a contact saved in CW-6's cellphone with the name of "Miss Bell (unity plaza)" and the BELL Number.

---

[6] While reviewing photographs on or about July 21, 2023, CW-6 also identified a photograph of another individual—*i.e.*, not BELL—as the same person to whom CW-6 made payments in exchange for a no-bid contracts from NYCHA. This individual looks somewhat similar to BELL but has never worked at Marlboro.

WHEREFORE, I respectfully request that a warrant be issued for the arrest of GWENDOLYN BELL, the defendant, and that she be arrested, and imprisoned or bailed, as the case may be.

_Karen Smith (by VF with permission)_
KAREN SMITH
Confidential Investigator
New York City Department of Investigation
Office of the Inspector General for NYCHA

Sworn to me through the transmission of this Complaint by reliable electronic means this __31__ day of __January__, 2024.

_____
THE HONORABLE VALERIE FIGUEREDO
United States Magistrate Judge
Southern District of New York